# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

FRANK B. o/b/o K.B.,

　　　　　　　　　　　　　　　Plaintiff,

　　　　v.　　　　　　　　　　　　　　　　　　　6:18-CV-455
　　　　　　　　　　　　　　　　　　　　　　　　　(ATB)

COMMISSIONER OF SOCIAL SECURITY,

　　　　　　　　　　　　　　　Defendant.

HOWARD D. OLINSKY, ESQ., for Plaintiff
MARIA FRAGASSI SANTANGELO, SPECIAL ASS'T. U.S. ATTORNEY, for
Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final

judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No.

18, in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73,

N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

## I. 　PROCEDURAL HISTORY

On September 4, 2014, an application for Supplemental Security Income ("SSI")

payments was filed on behalf of K.B., a child under the age of 18 (born in 2008).[1]

(Administrative Transcript ("T.") at 173-79, 200-06).  The application was initially

denied on February 5, 2015, and K.B.'s mother made a timely request for a hearing

---

[1] The original SSI application was filed by K.B.'s mother, Jennifer P. (T. 173-79, 200-06), however the instant action was commenced by K.B.'s father, Frank B., who appeared with K.B. at the administrative hearing. (T. 44-59).  Throughout this decision, the child on whose behalf this action was brought will be generally referred to as "the claimant," or by her initials, "K.B."  Frank B. will generally be referred to as "plaintiff" or "K.B.'s father," and Jennifer P. will generally be referred to as "K.B.'s mother."

before an Administrative Law Judge ("ALJ"). (T. 90-100, 116-18). The hearing, at which K.B. appeared with plaintiff and legal counsel, was conducted by ALJ Robert Wright on September 1, 2016. (T. 44-59).

On November 23, 2016, the ALJ issued a decision finding that K.B. was not disabled from the date of the application through the date of his decision. (T. 22-37). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on February 12, 2018. (T. 1-7).

## II.   ISSUES IN CONTENTION

Plaintiff makes the following arguments:

(1)   The ALJ erred by failing to weigh or even acknowledge the opinion of claimant's preschool teacher, Ms. Biwe. (Plaintiff's Brief ("Pl.'s Br.") at 8-10, Dkt. No. 11).

(2)   Claimant should have been found to have marked limitations in the domains of attending and completing tasks and moving about and manipulating objects. (Pl.'s Br. at 10-14).

Defendant argues that the complaint should be dismissed, and that the ALJ properly assessed K.B.'s limitations. (Defendant's Brief ("Def.'s Br.") at 9-21, Dkt. No. 14). For the reasons stated below, this court agrees with the defendant and will dismiss the complaint.

## III.   FACTUAL OVERVIEW

Plaintiff's counsel has carefully and completely outlined the facts and medical evidence in his brief. (Pl.'s Br. at 1-7). The ALJ has also included a detailed recitation of facts in his discussion of claimant's case. (T. 26-30). Rather than reciting this

evidence at the outset, the court will incorporate the facts as summarized by the plaintiff and the ALJ, and will discuss the relevant details below, as necessary to address the issues.

## IV.   APPLICABLE LAW

### A.   Disability Standard

An individual under the age of eighteen is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(C)(i).  *See Hudson v. Astrue*, 1:06-CV-1342 (LEK/VEB), 2009 WL 1212114, at *3-4 (N.D.N.Y. Apr. 30, 2009) (discussing the standard for children's disability benefits).  However, the definition provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity. . . ."  42 U.S.C. § 1382c(a)(3) (C)(ii).

The agency has developed a three-step process to be employed in determining whether a child can meet the statutory definition of disability.  20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02 Civ. 3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).  The first step of the test requires a determination of whether the child has engaged in substantial gainful activity.  20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488.  If so, then by statute and by regulation, the child is ineligible for SSI benefits.  42 U.S.C. § 1382c(a)(3) (C)(ii); 20 C.F.R. § 416.924(b).

3

If the child has not engaged in substantial gainful activity, the second step of the test requires examination of whether he or she suffers from one or more medically determinable impairments that, either alone or in combination, are properly regarded as "severe," in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If the child is found to have a severe impairment, the Commissioner must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth in 20 C.F.R. Pt. 404, Subpt. P., App. 1. *Id*. Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed impairment, and the twelve-month durational requirement is satisfied, the claimant will be found to be disabled. 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

"Functional" equivalence must be examined only if it is determined that the claimant's impairment does not meet or medically equal the criteria for a listed impairment. Analysis of functionality involves considering how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating

objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established by finding an "extreme" limitation, meaning "more than marked," in a single domain.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012)); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).  A reviewing court

may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera*, 697 F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles*

*v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## V.    THE ALJ'S DECISION

As the first step in his analysis, the ALJ found that K.B. had not engaged in substantial gainful activity since September 4, 2014, the filing date of the application for benefits.  (T. 25).  Next, the ALJ determined that K.B. had the following severe impairments: neurofibromatosis, scoliosis, asthma, learning disability and speech delays.  (*Id.*)  At the third step, the ALJ found that K.B. did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. § 404, Subpt. P, App. 1. (*Id.*).  The ALJ continued his analysis, and found that K.B. did not have an impairment or combination of impairments that functionally equaled the severity of a Listed Impairment under the regulations.  (T. 25-26).

In making his functional equivalence determination, the ALJ considered the medical evidence, K.B.'s academic records, and various reports prepared by several consultative examiners in the course of K.B.'s disability application.  (T. 26-30).  Based upon his review of the evidence, the ALJ found that K.B. had less than marked limitations in acquiring and using information, moving about and manipulating objects, health and physical well-being, and caring for herself; and no limitations in attending and completing tasks and interacting and relating with others.  (T. 30-37).

The ALJ also evaluated plaintiff's hearing testimony, and concluded that plaintiff's statements about the intensity, persistence and limiting effects of K.B.'s impairments were not entirely consistent with the record evidence. (T. 26). Because K.B. did not have "marked" limitations in two or more of the functional domains, and did not have an "extreme" limitation in any one domain, the ALJ concluded that K.B. was not disabled from the date of the application for benefits. (T. 37).

## VI. ANALYSIS

### A. Functional Domains

As discussed above, if the claimant's condition does not meet or medically equal a specifically listed impairment, the ALJ must determine whether claimant has an impairment or combination of impairments that functionally equals a listing. The functional equivalence determination is based upon an analysis of the six domains listed above. 20 C.F.R. § 416.926a(b)(1). Marked limitations in more than one domain would functionally equal the listings and require a finding that the claimant is disabled. 20 C.F.R. § 416.926a(d).

Plaintiff argues that the ALJ's determination of functional equivalence is not supported by substantial evidence due to an improper evaluation of K.B.'s limitations, specifically in the domains of attending and completing tasks and moving about and manipulating objects. (Pl.'s Br. at 10-14). A finding of marked limitation in both domains would render the claimant's condition "functionally equivalent" to the listings, and K.B. would qualify as disabled. Plaintiff further argues that the ALJ erred in failing to "weigh or even acknowledge" the opinion of claimant's preschool teacher,

Ms. Biwe, with respect to the domain of attending and completing tasks.

## 1.  Attending and Completing Tasks

In this domain, the Commissioner considers the child's ability "to focus and maintain . . . attention," and how well she can "begin, carry through, and finish . . . activities, including the pace at which [she] perform[s] activities and the ease with which [she] change[s] them." 20 C.F.R. § 416.926a(h).  The regulations provide that a preschooler  should be able to pay attention when spoken to directly, sustain attention to play and learning activities, and concentrate on activities like putting puzzles together or completing art projects. The child should also be able to focus long enough to do many more things by herself, such as getting her clothes together and dressing herself, feeding herself, or putting away toys.  The child should usually be able to wait her turn and to change her activity when a caregiver or teacher says it is time to do something else. 20 C.F.R. § 416.926a(h)(2)(iii).

A school-age child is expected to focus attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments.  The child should be able to concentrate on details and not make careless mistakes in work, beyond what would be expected in other children of like age who do not have impairments.  The child should be able to change activities or routines without distracting himself/herself or others, and stay on task and in place when appropriate.  The child should be able to sustain attention well enough to participate in group sports, read independently, and complete family chores. The child should also be able to complete a transition task - *e.g.*, to be ready for the

school bus, change clothes after gym, and change classrooms - without extra reminders and accommodation. 20 C.F.R. § 416.926a(h)(2)(iv).

The applicable regulations provide examples of limited functioning with respect to attending and completing tasks, including when a child (i) is easily startled, distracted, or over-reactive to sounds, sights, movements, or touch; (ii) is slow to focus on, or fails to complete, activities of interest–*e.g.*, games or art projects; (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones he is capable of completing; or (v) requires extra supervision to remain engaged in an activity. 20 C.F.R. § 416.926a (h)(3).

The ALJ concluded that K.B. had no limitations in the domain of attending and completing tasks. (T. 33). In discussing his conclusion, the ALJ acknowledged a June 2014 504 plan, indicating that K.B. struggled with independent work skills. (*Id.*). However, the ALJ also pointed out the more recent June 2016 504 plan on record, indicating that K.B. was able to complete class assignments independently and remain on task. (T. 351-55). The ALJ further referenced an opinion by K.B.'s teacher, opining that claimant had only "a few slight problems in attending and completing tasks . . . [and] had no problems in most subsets of this domain." (T. 33, 298). K.B.'s teacher also noted that the claimant had made significant progress in this area and become much more independent. (*Id.*). The ALJ further relied on the December 2014 opinion of consultative examiner Christina Caldwell, Psy.D., in concluding that the claimant did not evidence limitations in her ability to complete age appropriate tasks. (T. 33).

As a threshold matter, this court will address plaintiff's argument that the ALJ's failure to acknowledge and/or weigh the opinion of claimant's preschool teacher, Ms. Biwe, with respect to this domain is cause for remand. Based on the administrative record, it appears that K.B.'s mother previously filed a disability claim on K.B.'s behalf in May 2012, which was subsequently denied on initial review in October 2012. (T. 88, 101-05). There is no indication that claimant appealed the agency's October 2012 initial determination. In September 2014, claimant filed a second application for disability benefits which is the subject of the instant matter. In support of her most recent application, plaintiff submitted various educational and medical records to the agency, many of which predate the relevant disability period. Specifically, claimant submitted an October 4, 2012 Teacher Questionnaire prepared by K.B.'s preschool teacher, Ms. Biwe. (T. 245-52). As of October 2012, Ms. Biwe opined that claimant had a problem functioning in several domains, including acquiring and using information. (T. 246). Specifically, Ms. Biwe assessed that K.B. had an "obvious problem" with comprehending oral instructions, understanding and participating in class discussions, and learning new material. (*Id.*). Plaintiff now argues that in finding that K.B. was not disabled, the ALJ erred in disregarding Ms. Biwe's opinion, as it supports a finding of marked limitations in the domain of attending and completing tasks. (Pl.'s Br. at 10).

Evidence that predates a claimant's alleged disability onset period is ordinarily not relevant to evaluating a claimant's disability. *Briscoe v. Astrue*, 892 F. Supp. 2d 567, 582 (S.D.N.Y. 2012) (citing *Folio v. Astrue*, No. CV06-2700-PHX-EHC, 2008

WL 3982972, at *6 (D. Ariz. Aug. 20, 2008)); *see also* 20 C.F.R. 416.912(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary[.]"). In some circumstances, evidence predating the alleged onset date can be probative when assessing whether a limitation existed within the relevant period. *See generally Binder v. Comm'r of Soc. Sec.*, No. 15-CV-738 (NAM), 2016 WL 4079533, at *4 (N.D.N.Y. July 29, 2016) (noting that, although "[i]t is true that courts have found opinions provided before the onset date to be irrelevant in certain situations . . . this Court does not conclude that every opinion provided before an alleged onset date is irrelevant . . .") (citing *Mills v. Astrue*, No. 11-CV-955 (GLS), 2012 WL 6681685, at *2 (N.D.N.Y. Dec. 21, 2012)). This is particularly true where evidence before or after the relevant period shows findings indicative of an ongoing or chronic impairment that does not improve or fluctuate. *Mills*, 2012 WL 6681685, at *2 ("Notably, medical records which predate the claimant's alleged onset date can prove relevant to a claimant's later condition provided that there is indication that the symptoms experienced extended in duration into the relevant time period.") (internal citation and quotation marks omitted). From such evidence, an adjudicator may be able to infer that an individual's symptoms and limitations were similar during the relevant period. *Id.*

Here, however, the court does not find error with the ALJ's handling of the October 2012 Teacher Questionnaire prepared by Ms. Biwe. Contrary to plaintiff's argument, the ALJ expressly indicated that he had carefully considered the entire

record, which includes Ms. Biwe's assessment, in accordance with his duty under 20 C.F.R. 404.1520(3). (T. 25). "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Brault v. Soc. Sec. Admin., Com'r,* 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998)). "An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id*. (citation omitted).

Furthermore, the ALJ specifically discussed and declined to afford any evidentiary weight to certain medical records which also significantly predated the alleged disability period, as they were not probative of K.B.'s relevant functional abilities. (T. 30). The same can be said for Ms. Biwe's October 2012 Teacher Questionnaire, as the administrative record also includes subsequently created education records, including a November 2014 Teacher Questionnaire,[2] which are more probative of K.B.'s limitations during the claimed disability period. Because these subsequent records were prepared closer in time to the relevant disability period, and indicate that claimant's condition had improved since Ms. Biwe's assessment, the ALJ's conclusion to afford Ms. Biwe's opinion no evidentiary weight was not

---

[2]This court notes that teachers are not considered acceptable medical sources in 20 C.F.R. § 416.913(a), and therefore, their opinions are not entitled to controlling weight. *Piatt v. Colvin*, 80 F. Supp. 3d 480, 493(W.D.N.Y. 2015); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 386-87 (W.D.N.Y. 2015) (stating that "[i]t is well established that teacher questionnaires are considered valid 'other source' opinions"). The amount of weight to give "other source" opinions is based in part on the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole. 20 C.F.R. § 416.927(c). Ultimately, the ALJ is "free to decide that the opinions of 'other sources' . . . are entitled to no weight or little weight, [though] those decisions should be explained." *Oaks v. Colvin*, No. 13-CV-917, 2014 WL 5782486, at *8 (W.D.N.Y. Nov. 6, 2014) (quoting *Sears v. Astrue*, No. 2:11–CV–138, 2012 WL 1758843, at *3 (D. Vt. May 15, 2012)); *Conlin*, 111 F. Supp. 3d at 386.

inappropriate under the circumstances.

We then turn to the issue of whether the evidence relied on by the ALJ constituted substantial evidence to support his conclusion that claimant had no limitations in the domain of attending and completing tasks. As previously stated, the ALJ relied on the opinion of Dr. Caldwell, who conducted a consultative psychiatric examination of claimant on December 8, 2014. (T. 33, 480-83). Upon examination, Dr. Caldwell indicated that claimant was cooperative, and her overall presentation was age appropriate, but she had significant difficulty sitting still. (T. 481). She further noted that claimant's attention and concentration were intact. (*Id.*). Based on her examination of K.B., Dr. Caldwell opined that claimant did not evidence limitations in her ability to complete age appropriate tasks, but claimant evidenced mild limitations in her ability to attend to, follow, and understand age-appropriate directions and adequately maintain appropriate social behavior. (T. 482). Finally, Dr. Caldwell opined that claimant did not evidence limitations in her ability to interact with peers or adults. (*Id.*). Dr. Caldwell concluded that the results of her evaluation were not consistent with any psychiatric problems that would significant[ly] interfere with [claimant's] ability to function on a daily basis. (*Id.*).

Considering the totality of the evidence as relied on by the ALJ, this Court finds that the evidence of record substantially supports a conclusion that plaintiff had, at most, a less than marked impairment in this domain. Admittedly, the ALJ may have erred in failing to reconcile the opinions on which he relied with some of the limitations

noted therein.[3]  Nevertheless, the limitations noted with respect to this domain are consistently qualified as "slight" or "mild" in nature, and a such would not constitute substantial evidence for a finding of marked limitation.   "To the extent that the ALJ erred in finding no impairment where he should have found a less than marked impairment, that error was harmless." *Lisinski v. Colvin*, No. 13-CV-00375, 2015 WL 4628931, at *9 (W.D.N.Y. Aug. 3, 2015) (citing *Ruff ex rel. LMF v. Colvin*, 2015 WL 694918, *11 (S.D.N.Y. Feb. 18, 2015) (noting that finding of "no limitation" amounts to harmless error where the limitation is actually "less than marked").  Since substantial evidence supports a conclusion that plaintiff suffered, at most, a less than marked impairment in this domain, and any error in finding no limitation was harmless, the ALJ's conclusion will not be disturbed.  *See id.*

### 2.    Moving About and Manipulating Objects

This domain contemplates a claimant's ability to "move [her] body from one place to another," as well as "move and manipulate things." 20 C.F.R. § 416.926a(j). Preschool children "should be able to walk and run with ease [and] climb stairs and playground equipment with little supervision." *Id.* § 416.926a(j)(2)(iii). Further, their fine motor skill should be developing, allowing them to "complete puzzles easily, string beads, and build with an assortment of blocks," as well as "show[ ] increasing control

---

[3]The June 2016 504 plan indicated that some aspects of K.B.'s work still required monitoring, and that K.B. sought reassurance often, as well as self-imposed breaks, which it was suggested may require further monitoring.  (T. 353). In her 2014 Teacher Questionnaire, Ms. Liwecke noted that K.B. still required some support in this area, and often rushed through her work.  (T. 298).  Dr. Caldwell opined that K.B. evidenced mild limitations in her ability to attend to, follow, and understand age-appropriate directions.  (T. 482).

of crayons, markers, and small pieces in board games . . . cut with scissors independently[,] and manipulate buttons and other fasteners." *Id.*

A school-age child is expected to move at an efficient pace about her school, home, and neighborhood. 20 C.F.R. § 416.926a(j)(2)(iv). The child's increasing strength and coordination should expand her ability to enjoy a variety of physical activities, such as running and jumping, and throwing, kicking, catching and hitting balls in informal play or organized sports. *Id.* The child's developing fine motor skills should enable her to do things like use many kitchen and household tools independently, use scissors, and write. *Id.*

The applicable regulations provide examples of limited functioning with respect to moving about and manipulating objects, including when a child (i) experiences muscle weakness, joint stiffness, or sensory loss (e.g., spasticity, hypotonia, neuropathy, or paresthesia) that interferes with motor activities (e.g., the child unintentionally drops things); (ii) has trouble climbing up and down stairs, or has jerky or disorganized locomotion or difficulty with balance; (iii) has difficulty coordinating gross motor movements (e.g., bending, kneeling, crawling, running, jumping rope, or riding a bike); (iv) has difficulty with sequencing hand or finger movements; (v) has difficulty with fine motor movement (e.g., gripping or grasping objects); or (vi) has poor eye-hand coordination when using a pencil or scissors. 20 C.F.R. § 416.926a(j)(3).

The ALJ concluded that K.B. had less than marked limitations in the domain of moving about and manipulating objects. (T. 35). In support of his conclusion, the ALJ

relied on evidence indicating that claimant was able to ambulate independently, participate in gym and recess, swim, bike and play basketball. (*Id.*). The ALJ also noted the opinion by claimant's treating physician that, even when she had a torso cast, K.B. could still participate in gym and recess without restriction. (*Id.*). The ALJ acknowledged that K.B. had some difficulties with fine motor skills, and that according to K.B.'s teacher, she needed support in this area. (*Id.*). He also noted the opinion of K.B.'s teacher, that she had "mostly slight and some serious problems in this area." (*Id.*).

In rendering his decision, the ALJ also relied on the December 8, 2014 opinion of pediatric consultative examiner Tanya Perkins-Mwuantuali, M.D., which opinion he afforded "significant weight." (T. 29, 485-89). Upon physical examination, Dr. Perkins-Mwuantuali noted that K.B.'s behavior appeared juvenile for her age. (T. 486). Claimant needed help getting on the examination table because of the cast covering her trunk. (*Id.*). Claimant's gait appeared normal, and she could walk on heels and toes. (*Id.*). She exhibited a normal run for a child of her age, however claimant could not skip. (*Id.*). Dr. Perkins-Mwuantuali also noted that claimant's typical daily activities included playing, watching television and listening to music. She noted that K.B. did not perform any chores around the house, and that claimant was not taking gym because she was in a cast. (*Id.*).

Upon physical examiation, Dr. Perkins-Mwuantuali noted that claimant's hips were symmetrical, and she had normal muscle tone for her age. (T. 488). K.B.'s range of motion in all extremities was within normal limits, without any indication of muscle

atrophy.  (*Id.*).  Dr. Perkins-Mwuantuali noted K.B.'s motor strength was abnormal, with right proximal leg weakness with hip flexion, abduction, and adduction compared to the left.  (*Id.*).  She further noted that K.B. exhibited age appropriate fine motor activity of her hands, and that she could handle large and small objects in an age appropriate way. (*Id.*).  K.B. declined to write and could not tie a bow, but she could button a small button, zip a zipper, and use velcro fasteners.  (*Id.*).  K.B. exhibited reflexes physiologic and symmetrical in her upper and lower extremities, however her Babinski reflex was not appropriate for her age.  (T. 489).

Based upon her examination findings, Dr. Perkins-Mwuantuali opined that claimant could participate in educational and social activities.  (*Id.*). She further opined that K.B.'s recreational activities were limited, with no contact sports or swimming. (*Id.*).  In affording Dr. Perkins-Mwuantuali's opinion significant weight, the ALJ noted plaintiff's testimony that claimant swims, rides her bike and plays basketball; indicating that K.B. was not as limited as Dr. Mwantuali opined with respect to recreational activities.  (T. 29).

Plaintiff argues that the ALJ erred in evaluating the medical and opinion evidence, inasmuch as the record reflects that claimant exhibited marked limitations in the domain of moving about and manipulating objects.  (Pl.'s Br. at 12).  An ALJ is entitled to resolve conflicts in the record, but his discretion is not so wide as to permit him to pick and choose only evidence that supports a particular conclusion. *See Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y.1988) (citing *Fiorello v. Heckler*, 725 F.2d 174, 175-76 (2d Cir. 1983)); *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289

18

(E.D.N.Y. 2004) ("It is not proper for the [hearing officer] to simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the plaintiff's claims.").

Here, there was no indication that the ALJ impermissibly "cherry picked" the record. On the contrary, claimant's treatment records throughout the relevant disability period consistently indicate that K.B. was an "active" child who, upon physical examination, exhibited a normal gait, with full range of motion in her extremities and normal strength and reflexes. (T. 507, 509, 595, 601, 606, 608, 614, 651, 655, 659, 617). K.B.'s mother indicated that she had not noticed any problems with claimant's ability to move or walk as of October 2014 (T. 311), and in September 2016, her father testified that claimant enjoyed swimming, basketball, riding her bike, and playing on the swings. (T. 51-52). Upon examination, consultative examiner Dr. Perkins-Mwantuali opined that K.B. exhibited age appropriate fine-motor activity of the hands, with the ability to button, zip and use velcro fasteners. (T.488). Moreover, it was not improper for the ALJ to discredit the limitations proscribed by Dr. Perkins-Mwantuali with respect to recreational activities, to the extent plaintiff testified to the contrary.

Plaintiff also argues that K.B. had a marked limitation inasmuch as she was placed in a "highly restrictive body brace" (Pl.'s Br. at 14), however this contention is not supported by the evidence of record. During the relevant disability period, plaintiff was placed in a torso cast in an effort to mitigate the curvature of her spine, due to her scoliosis. (T. 507-08). With respect to the cast, plaintiff's neurosurgeon Dr. Carl specifically opined that it was something K.B. could "bathe in, swim in and live in,"

including activities such as running and jumping. (T. 505, 508). Dr. Carl noted that while in the cast, they would "let [K.B.] be active in any way she wanted to[,] within the confines of the cast." (T. 509). Several months after the cast was placed, Dr. Carl reiterated this opinion when he notified K.B.'s school that she had "no limitations on activity while in the cast," and that K.B. "may participate in gym and recess without restrictions while the cast is in place." (T. 502). As such, K.B.'s cast, in and of itself, did not cause her to have a marked limitation in this domain.

Plaintiff's remaining arguments are furthermore unavailing. The majority of evidence cited by plaintiff in support of a marked limitation in moving about and manipulating objects are medical records from prior to the relevant disability period, and the record as a whole indicates that K.B. exhibited improvement in this domain throughout the years leading up to and during the relevant disability period. Furthermore, with respect to evidence cited by plaintiff indicating that K.B. sustained some limitations with respect to moving about and manipulating objects, the ALJ's finding that K.B. suffered from some limitations in this domain, albeit not to a marked degree, is supported by substantial evidence.[4] (T. 35).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's

---

[4]Even if this court found that the ALJ erred in finding that K.B. had less than a marked limitation in moving about and manipulating objects, the Commissioner's ultimate finding would not be disturbed. A finding of disability is warranted when a child claimant has a marked limitation in *two* domains or an extreme limitation in any one domain. 20 C.F.R. §416.926a(a). Here, K.B. did not have a marked limitation in any other domain, and substantial evidence does not support a finding of any extreme limitation. As such, a finding of marked limitation in moving about and manipulating objects would not have resulted in a finding of disability.

complaint is **DISMISSED**, and it is

      **ORDERED**, that judgment be entered for the **DEFENDANT.**

Dated: July 29, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge